IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:08-cr-00128-MR-WCM-3

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> TERRANCE DEANDREW BACKUS, ) <br> ) <br> Defendant. ) <br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's Motion for Reduced Sentence under the First Step Act of 2018 [Doc. 833].

**I.  BACKGROUND**

Between 2006 and 2008, the Defendant Terrance Deandrew Backus participated in a drug-trafficking conspiracy in Burke County, North Carolina. [Doc. 397: PSR at ¶¶ 4-37]. In April of 2007, a deputy with the Catawba County Sheriff's Office attempted to stop the Defendant, who was driving a motorcycle at a high rate of speed and had crossed a double yellow line to pass a pickup truck. [Id. at ¶ 19]. When the Defendant saw the officer, he fled, passing cars on the right shoulder of the road, driving on the wrong side of the road, and traveling at more than 80 miles per hour. [Id.]. The

Defendant's motorcycle eventually stalled when he attempted a u-turn, but he still resisted arrest, forcing a deputy to drag him off of his motorcycle. [Id.]. Officers found 14.9 grams of cocaine powder and $2,140 on the Defendant's person. [Id.]. Officers made a controlled purchase of cocaine base from the Defendant eight days later. [Id.]. When officers subsequently searched the Defendant's home, they found marijuana and several other controlled substances, a loaded .45 caliber pistol, and ammunition. [Id. at ¶ 21]. Additionally, one of the Defendant's drug-trafficking associates reported to police that the Defendant asked him to hold a machine gun for the Defendant. [Id. at ¶ 35]. Two days later, the Defendant's brother came and retrieved the gun. [Id.].

Investigators ultimately determined that the Defendant was a participant in a conspiracy to distribute cocaine base consisting of at least 15 co-conspirators and that the Defendant was responsible for at least 2.8 kilograms of crack cocaine during the course of that conspiracy. [Id. at ¶ 38].

A federal grand jury indicted the Defendant and 14 others and charged them with conspiring to possess with intent to distribute at least 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [Doc. 2: Indictment at 1-2]. The Defendant entered into a written Plea Agreement with the Government, agreeing to plead guilty to the conspiracy charge, an

2

Case 1:08-cr-00128-MR-WCM   Document 836   Filed 10/19/20   Page 2 of 9

offense which carried a statutory range of ten years to life and a minimum supervised-release term of five years. [Doc. 140: Plea Agreement]. In the Plea Agreement, the parties stipulated that at least 150 but less than 500 grams of crack cocaine were reasonably foreseeable to the Defendant. [Id. at 2 ¶ 6a].

At sentencing, the Court determined the Defendant to be a career offender and calculated a Guidelines range of 262 to 327 months under the career-offender guideline. [See Doc. 407: Statement of Reasons]. The Court then imposed a sentence of 262 months' imprisonment and a five-year term of supervised release. [See Doc. 406: Judgment].

The Defendant now moves for a reduction of his sentence under the First Step Act. [Doc. 833]. He specifically requests that the Court impose a reduced sentence of 168 months and a reduced supervised release term of four years. [Id.]. The Government consents to a reduction of the Defendant's sentence, but only to 210 months' imprisonment. [Doc. 835]. The Government opposes any further reduction in the Defendant's sentence. [Id.].

## II.   DISCUSSION

On August 3, 2010, the Fair Sentencing Act of 2010, Pub. L. 111-220, went into effect. Section 2 of the Act increased the quantity of cocaine base

required to trigger the enhanced penalties of Section 841. Specifically, it raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams." Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage. Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act.

On December 21, 2018, the President signed into law the First Step Act of 2018, Pub. L. 115-391. Section 404 of the Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(b) then provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."

The Defendant is eligible for relief under the First Step Act because he was convicted of a "covered offense" under Section 404(a)'s definition. See

4

United States v. Wirsing, 943 F.3d 175 (4th Cir. 2019). His offense was committed before August 3, 2010; he was subjected to the enhanced statutory penalties under § 841(b)(1)(A); and those statutory penalties were "modified by Section 2 . . . of the Fair Sentencing Act." Further, the Defendant's sentence has not been previously reduced by the operation of Sections 2 or 3 of the Fair Sentencing Act of 2010, and no previous motion has been made by the Defendant pursuant to Section 404 of the First Step Act of 2018.

Here, had the Fair Sentencing Act been in effect when the Defendant was sentenced, the Defendant's advisory Guidelines range would have been 210 to 262 months' imprisonment. [Doc. 834: Supp. PSR at 2]. While the parties agree on the recalculation of the advisory Guidelines range under the First Step framework, the parties disagree sharply as to the amount of reduction warranted. The Government argues that the Defendant's sentence should be reduced only to 210 months—the bottom of the range advised by the Guidelines. [Doc. 835 at 4]. The Defendant argues, however, that his sentence should be reduced even further—to 168 months' imprisonment, the equivalent of a two-level variance—based on the strong evidence of post-sentencing rehabilitation. [Doc. 833 at 9 (citing United States v. Chambers, 956 F.3d 667, 674 (4th Cir. 2020) (holding that a district

5

court "may vary from the Guidelines and may consider post-sentencing conduct" in exercising its discretion to grant a sentence reduction under the First Step Act)].

As this Court explained when sentencing the Defendant, the seriousness of the Defendant's offense conduct and the need to promote respect for the law and to provide just punishment weigh in favor of a sentence within the range advised by the Guidelines. [See Doc. 423: Transcript at 13]. The Defendant's offense of conviction included the distribution of crack cocaine to numerous individuals, his possession of multiple firearms, his flight from law enforcement that could have been fatal to the Defendant or any other number of innocent bystanders, and his resisting arrest. The Court's determination that the need to promote respect for the law warrants a Guideline sentence remains sound.

The Defendant's criminal history also weighs against a reduction of the magnitude suggested by the Defendant. At the time the Defendant committed his drug-trafficking offense, he had previously been convicted of two counts of trafficking in cocaine, three counts of assault on a government employee using aggravated physical force, felony obstructing justice, and voluntary manslaughter for which he served 9 years in prison. [Doc. 397:

6

PSR at ¶¶ 64-66, 68]. The Defendant's long history of criminal misconduct also weighs in favor of a Guideline sentence.

The Defendant, however, has presented ample evidence of positive post-sentencing conduct and rehabilitative efforts. BOP records show that the Defendant is currently assigned to Safety and Sanitation, where he has "consistently earned average and above average work evaluations." [Doc. 833-2]. His caseworker notes that the Defendant has also "gained employable work skills through his employment . . . as a food prepper, Server, and cook." [Id.]. In addition, the Defendant has completed at least sixteen other educational and work programs, including drug education. [Docs. 833-1; 833-2; Doc. 834: Supp PSR at 3]. He reports that he has earned over 180 certificates while in BOP custody. [Doc. 833-4]. The Defendant also has contributed to his current community by volunteering as a "suicide companion" within BOP. [Doc. 833-4]. Notably, the Defendant has incurred only one minor disciplinary infraction during his time in custody. [Doc. 834: Supp PSR at 3]. Since 2015, he has been entirely free of disciplinary infractions. [Id.].

In addition to this evidence of post-sentencing rehabilitation, the Defendant has presented a letter from his mother, Joan Heath, with whom the Defendant plans to live upon release. [Doc. 833-3]. Ms. Heath reports

7

that she and her husband have been married for 35 years and have a "stable home." [Id.].  She describes them as "devoted Christians[, who] also work in the church."  [Id.].  Ms. Heath advises that the Defendant has a large family and thus will have a strong support system. She indicates that they have already purchased lawn equipment to give the Defendant a head-start on developing employment. [Id.].

Balancing the aforementioned § 3553(a) factors against the Defendant's good post-sentencing conduct and strong family support, the Court finds that a reduction of the Defendant's sentence below the now-reduced Guideline range is warranted, although not to the degree requested by the Defendant. Accordingly, the Court in its discretion reduces the Defendant's sentence to a period of 180 months' imprisonment.  The Defendant's term of supervised release shall be reduced to a period of four (4) years.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Reduced Sentence under the First Step Act of 2018 [Doc. 833] is **GRANTED IN PART**, and the Defendant's sentence is hereby reduced to **180 months' imprisonment** and the term of supervised release is hereby reduced to a term of **four (4) years**.  All other terms and conditions of the Defendant's Judgment [Doc. 406] shall remain in full force and effect.

The Clerk is respectfully directed to prepare an Amended Judgment in accordance with this Order.

The Clerk is further directed to provide copies of this Order to the Defendant, counsel for the Defendant, the United States Attorney, the United States Marshals Service, the United States Probation Office, and the United States Bureau of Prisons.

**IT IS SO ORDERED.**

Signed: October 19, 2020

Martin Reidinger
Chief United States District Judge